IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERITION PARTNERS MASTER FUND, LTD. and VERITION MULTI-STRATEGY MASTER FUND, LTD.<br><br>Plaintiffs,<br><br>v.<br><br>W. BRADFORD CORNELL, SAN MARINO BUSINESS PARTNERS, LLC, and COHERENT ECONOMICS, LLC,<br><br>Defendants. | Civil Action No. 19-377-CFC |

David A. Jenkins, SMITH KATZENSTEIN JENKINS, LLP, Wilmington, Delaware; Erik S. Groothuis, Vera M. Kachnowski, SCHLAM STONE & DOLAN, LLP, New York, New York
    *Counsel for Plaintiff*

Ryan P. Newell, Shaun Michael Kelly, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Gary W. Lipkin, Alexandra D. Rogin, ECKERT SEAMANS CHERIN & MELLOTT LLC, Wilmington, Delaware; Peter M. Spingola, Robert J. Shapiro, John M. Own, CHAPMAN SPINGOLA, LLP, Chicago, Illinois; Norman T. Finkel, Richard M. Goldwasser, William R. Klein, Matthew P. Tyrrell, SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC, Chicago, Illinois
    *Counsel for Defendant*

**MEMORANDUM OPINION**

June 3, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiffs Verition Partners Master Fund, Ltd. and Verition Multi-Strategy Master Fund, Ltd Pending have sued Defendants W. Bradford Cornell, San Marino Business Partners, LLC, and Coherent Economics, LLC. Pending before me are two motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. D.I. 24; D.I. 25. On May 11, 2020, I held oral argument on the motions. At the close of the argument, I denied the Defendants' motions to dismiss with respect to all challenged claims except Count V, a negligence claim titled "Professional Malpractice." I invited the parties to submit supplemental briefing on that issue. The parties have now done so. *See* D.I. 44; D.I. 45.

## I.     BACKGROUND[1]

In 2016 Plaintiffs brought an appraisal action in the Delaware Court of Chancery in connection with a merger between Verizon and AOL. D.I. 1-1 ¶ 1. Plaintiffs' counsel retained Defendants to provide expert consulting services in connection with the appraisal action. D.I. 1-1 ¶ 13.

---

[1] In considering Defendants' motions, I accept as true all factual allegations in the Complaint and view those facts in the light most favorable to Plaintiffs. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

Unbeknownst to Plaintiffs, before their counsel retained Defendants and while Cornell was working at another expert consulting service firm, Compass Lexecon, Cornell repeatedly solicited Verizon to serve as Verizon's valuation expert in the appraisal action. D.I. 1-1 ¶ 16. On July 10, 2015, Cornell reached out to Verizon's counsel, Wachtell, Lipton, Rosen & Katz (Wachtell), and pitched himself as a valuation expert for the case. D.I. 1-1 ¶ 19. The next day, Cornell sent an email directly to Verizon pitching his services. D.I. 1-1 ¶ 20. In that email he called appraisal actions "a nuisance" and said that "[t]hey generally have little merit but are almost becoming a cost of doing an acquisition." D.I. 1-1 ¶ 20. He also referred to Plaintiffs' strategy as "legal arbitrage." D.I. 1-1 ¶ 20.

On July 28, 2015, Cornell emailed Professor Daniel Fischel, another valuation expert at Compass Lexecon, to say that Verizon had "the better side of the case in [his] opinion and [that he] would not want to loose [sic]" the opportunity to serve as Verizon's expert. D.I. 1-1 ¶ 21. That same day, Cornell emailed Verizon's in-house counsel to assure them that he "could not work against" the company. D.I. 1-1 ¶ 22. In response, Verizon's in-house counsel thanked him and said they were "very glad that [he wouldn't] be appearing against [them]." D.I. 1-1 ¶ 22.

2

Ultimately, Verizon retained Compass Lexecon as experts for the appraisal action. D.I. 1-1 ¶ 25. But Verizon chose Fischel over Cornell as their expert. D.I. 1-1 ¶ 25

After learning that Fischel had been selected over him as Verizon's expert, Cornell sent Fischel an email titled "Verizon/AOL" that read as follows:

> Dan,
>
> Like you I tend to bear grudges. And though I see you as perhaps the best general expert witness in the country, when it comes to appraisal, particularly for tech companies, I think I am uniquely well qualified. So when Verizon/Wachtell chose you without even talking to me further that leads to a grudge against them.
>
> Consequently, I have had some conversations with plaintiffs. I don't know if it will go anywhere or if I like the case enough to take it. But if it looks OK, I plan to go forward. I don't want to make a habit of being adverse to [Compass Lexecon], but I see this as another special case. I will let you know if anything comes of it.

D.I. 1-1 ¶ 25. In a later exchange with Fischel, Cornell stated that his "main concern [in working for Plaintiffs] is that the plaintiffs have a shitty case (that is not based on conversation just what I have read online) so I will have to be careful to avoid letting my grudge lead to a situation where I threaten my reputation." D.I. 1-1 ¶ 26.

In conversations with Plaintiffs' counsel, Cornell falsely represented that he had no conflicts working against Verizon and failed to disclose his prior

communications with Verizon, its counsel at Wachtell, and Fischel. D.I. 1-1 ¶ 27. Plaintiffs then retained Defendants as their experts for the appraisal action.

When Cornell took the stand for Plaintiffs in the appraisal action, Verizon cross-examined him about these communications to show his "grudge" against Verizon and his negative assessment of Plaintiffs' case. D.I. 1-1 ¶ 27. Verizon also emphasized Cornell's bias in its post-trial briefing, D.I. 1-1 ¶ 32; so much so, that Plaintiffs were forced to capitulate in their answering post-trial brief and devoted only a footnote to Cornell's defense. D.I. 1-1 ¶ 35.

In its opinion in the appraisal action, the Court had this to say about Cornell's testimony:

> For reasons not necessary to detail, however, the Respondent questioned Dr. Cornell's impartiality in this matter, and the Petitioners seem content to use the DCF model presented by the Respondent's expert as a starting point for my analysis. Accordingly, I start with the DCF valuation provided by that expert, Professor Daniel Fischel, and consider the Petitioners' limited arguments that certain assumption or inputs in that valuation must be changed.

D.I. 1-1 ¶ 37. Ultimately, the Court applied minor adjustments to Fischel's model that resulted in a fair value determination of $48.70 per share of AOL. D.I. 1-1 ¶ 38. Fischel's valuation had been $44.85 per share. D.I. 1-1 ¶ 38. Cornell's valuation had been $68.98 per share. D.I. 1-1 ¶ 38.

4

Plaintiffs now seek the fees they paid Defendants in the appraisal action. Plaintiffs also seek the difference between "the fair value determination that the court in the Appraisal Action would have reached had Defendants been unconflicted (or had a suitably qualified unconflicted expert been retained), and the fair value determination that the Court in the Appraisal Action actually reached." D.I. 1-1 ¶ 39. Plaintiffs' complaint includes claims for Fraudulent Inducement, Fraudulent Concealment, Breach of Contract, Aiding and Abetting Fraud, and Professional Malpractice. D.I. 1-1 ¶¶ 54–91

## II.  LEGAL STANDARDS

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

5

When considering Rule 12(b)(6) motions to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

### III. ANALYSIS

Defendants argue that because Plaintiffs' negligence claim is coextensive with their breach of contract claim, it should be dismissed under Delaware's "economic loss rule." Delaware's economic loss rule "is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged." *Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *6 (Del. Super. Ct. Mar. 29, 2007). "The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law[,]" and the rule "supports the ability of persons to allocate the risks of business transactions." *Id.* Nevertheless, "the same circumstances may give rise to both breach of contract and tort claims if the plaintiff asserts that the alleged contractual breach was accompanied by the breach of an independent duty imposed by law." *Data Mgmt. Internationale, Inc. v.*

6

*Saraga*, No. CIV.A. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).

Here, Defendants' relationship with Plaintiffs is a creation of contract. Defendants were hired to provide expert witness services in Plaintiffs' appraisal action. Plaintiffs have alleged that Defendants breached the contract by failing to provide adequate services. To the extent Defendants were negligent in providing expert witness services, they were also in breach of the contract. Accordingly, Plaintiffs' negligence claim is prohibited as a matter of law by Delaware's economic loss rule.

Plaintiffs concede that no Delaware court has ever recognized a professional negligence cause of action against an expert witness. They nonetheless ask me to be the first court to recognize such a claim under Delaware law.

"With respect to an issue of state law in a diversity case, when there is no decision from the state's highest court directly on point, [the Court is] charged with predicting how [the state's highest court] would resolve the question at issue." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (citation omitted). I predict that the Delaware Supreme Court would not recognize a negligence cause of action for expert witnesses for two reasons.

First, as a general matter, when confronted with such requests, the Delaware Supreme Court has practiced judicial restraint and left to the state's legislative

7

branch the determination of whether new causes of action should be recognized. *See, e.g., Moss Rehab. v. White,* 692 A.2d 902, 909 (Del. 1997) (declining to recognize a third-party claim for malpractice against a provider of driver education services); *Wright v. Moffitt,* 437 A.2d 554, 556 (Del. 1981) (declining to create cause of action for Dram Shop liability, and stating "the General Assembly is in a far better position than this Court to gather the empirical data and to make the fact finding necessary to determine what the public policy should be . . . .").

Second, the parties against whom Delaware has recognized professional negligence causes of action—lawyers, doctors, accountants, architects, engineers, insurance agents, and massage therapists[2]—require a license to practice.[3] Because those professionals are required by law to satisfy the requirements of their licensing body, they owe their respective clients duties of care that exist

---

[2] *See, e.g., Isaacson, Stolper & Co. v. Artisan's Sav. Bank,* 330 A.2d 130 (Del. 1974) (accountant); *Seiler v. Levitz Furniture Co.,* 367 A.2d 999 (Del. 1976) (architect); *Weaver v. Lukoff,* 511 A.2d 1044 (Del. 1986) (attorney); *Melvin L. Joseph Const. Co., Inc. v. Gray Ins. Agency of Del.,* 1988 WL 130416 (Del. Super. Ct. Nov. 17, 1988) (insurance agent); *Tydings v. Loewenstein,* 505 A.2d 443 (Del. 1986) (engineer); *Christian v. Wilmington Gen. Hosp. Ass'n,* 135 A.2d 727 (Del. 1957) (doctor); *Collis v. Topper's Salon & Health Spa, Inc.,* 2013 WL 4716237 (Del. Super. Ct. Aug. 29, 2013) (massage therapist).

[3] See 10 Del. C. § 1906 (license requirements for attorneys); 24 Del. C. § 1720 (medical doctors); 24 Del. C. § 107 (accountants); 24 Del. C. § 307 (architects); 24 Del. C. § 2817 (engineers); 18 Del. C. § 1701 (insurance agents); and 24 Del. C. § 5307 (massage therapists).

independent of any contract they have with their clients.  Expert witnesses, by contrast, are not required to hold a license to offer opinions or testimony.

## IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' motions to dismiss with respect to Plaintiffs' Professional Malpractice Claim.

The Court will enter an Order consistent with this Memorandum Opinion.