**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

VERITION PARTNERS MASTER FUND, LTD. and VERITION MULTI-STRATEGY MASTER FUND, LTD.,

Plaintiffs,

v.

W. BRADFORD CORNELL, SAN MARINO BUSINESS PARTNERS, LLC, and COHERENT ECONOMICS, LLC,

Defendants.

Civil Action No. 19-377-CFC-CJB

**MEMORANDUM ORDER**

The Court, having reviewed the parties' joint motion regarding a discovery dispute ("motion"), (D.I. 100), the briefing related thereto, (D.I. 96; D.I. 97; D.I. 99), having heard argument on December 14, 2020, and having reviewed the parties' supplemental briefing, (D.I. 101; D.I. 102), hereby ORDERS as follows:

(1) This case relates to a now-concluded appraisal action in the Delaware Court of Chancery (the "Appraisal Action"), in which Plaintiffs Verition Partners Master Fund, Ltd. and Verition Multi-Strategy Master Fund, Ltd. ("Plaintiffs") along with other petitioners who are not parties to this suit (the "Non-Party Petitioners") sought a judicial determination of the value of their AOL, Inc. stock. (D.I. 97 at 1) In the Appraisal Action, Plaintiffs and the Non-Party Petitioners, through their counsel, Grant & Eisenhofer ("G&E"), hired Defendants W. Bradford Cornell, San Marino Business Partners, LLC and Coherent Economics, LLC ("Defendants") to serve as valuation experts. (*Id.*) In the instant case, Plaintiffs allege that when they and the Non-Party Petitioners were considering whether to retain Defendants in the Appraisal Action, Defendants failed to disclose certain information about Mr. Cornell (including the fact that, prior to being retained by Plaintiffs and the Non-Party Petitioners, he had unsuccessfully tried to serve as the opposing side's expert). (*Id.*) Plaintiffs assert that once this information eventually came to light in the Appraisal Action, it severely harmed Plaintiffs' case there. (*Id.*) Defendants, for their part, take the view that the outcome of the Appraisal Action was not affected by Mr. Cornell's alleged actions referenced above, and instead may

well have been the result of unrelated strategic choices that Plaintiffs/Non-Party Petitioners/G&E made in the Appraisal Action.

(2) The dispute at issue here is over whether Plaintiffs must produce to Defendants in this case: (a) certain documents and communications otherwise protected by the attorney-client privilege (here, via the joint-client privilege); (b) that were exchanged in the Appraisal Action; (c) between Plaintiffs and certain or all of the Non-Party Petitioners on the one hand, and G&E on the other (the "communications at issue"). (*See* D.I. 96 at 1; D.I. 97 at 2) Plaintiffs have already produced to Defendants any responsive communications from the Appraisal Action between Plaintiffs and G&E that did not include the Non-Party Petitioners. (D.I. 96 at 3; D.I. 97 at 2) Defendants were not copied or included on the communications at issue. (*See* D.I. 96 at 3-4; D.I. 97 at 2)

(3) Delaware state privilege law applies in this diversity jurisdiction matter. *See Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Tr.*, Civil Action No. 09-CV-0663 (JCJ), 2011 WL 1636949, at *1 (D. Del. Apr. 29, 2011); (D.I. 96 at 2; D.I. 97 at 2). In *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007), a case involving application of Delaware privilege law, the United States Court of Appeals for the Third Circuit clearly stated that "waiving the joint-client privilege requires the consent of all joint clients [and that] a client may unilaterally waive the privilege as to its own communications with a joint attorney, so long as those communications concern only the waiving client[.]" 493 F.3d at 363 & n.17 (citation omitted). The *Teleglobe* Court went on to emphasize that the waiving client "may not, however, unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients." *Id.* at 363 (citation omitted); *see also Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 479, 485-86 (D. Del. 2012).

(4) The Court does not agree with Defendants that these statements in *Teleglobe* were "dicta" or that they were somehow only relevant in light of the particular facts of that case. (D.I. 96 at 4-5) Instead, they are a reasoned articulation of the state of the relevant law. (D.I. 97 at 2-3)[1] Thus, *Teleglobe* instructs that Plaintiffs may (as they already have here) waive the privilege solely as to their own communications with G&E that did not involve the Non-Party Petitioners. But pursuant to *Teleglobe's* teaching, Plaintiffs may *not*

---

[1] In setting out the limits of the joint-client privilege, *Teleglobe* was relying on guidance provided by the Restatement (Third) of the Law Governing Lawyers § 75 ("Section 75"). 493 F.3d at 363. And indeed, Delaware state courts, in recognizing the joint-client privilege, have also similarly relied on Section 75 to set out the contours of that privilege. *See TCV VI, L.P. v. TradingScreen Inc*, C.A. No. 10164-VCL, 2017 WL 11590772, at *2 (Del. Ch. Dec. 21, 2017).

unilaterally waive the Non-Party Petitioners' privilege in the communications at issue. And since the Non-Party Petitioners have neither waived that privilege nor consented to production, the communications at issue would be subject to the privilege and should not be produced.

(5) The Court also concludes that the holding in *Newsome v. Lawson*, 286 F. Supp. 3d 657 (D. Del. 2017), does not suggest a different result. In that case, where a former joint client was suing the former joint attorney, the Court held that the former joint attorney could not withhold privileged communications from the joint representation, even if the other non-suing joint client did not consent to the disclosure. *Newsome*, 286 F. Supp. 3d at 664. But the holding in *Newsome* was premised on the assumption that "[joint clients] usually understand that all information is to be disclosed to all of them." *Id*. (first alteration in original) (internal quotation marks and citation omitted). Here, however, although G&E did hire Defendants to assist in its representation of Plaintiffs/Non-Party Petitioners in the Appraisal Action, it is not as clear as in *Newsome* that the joint clients would have "underst[ood] that all information" disclosed between them and G&E would necessarily have been shared with Defendants (i.e., experts hired for a particular purpose). (D.I. 102 at 2); *see Newsome*, 286 F. Supp. 3d at 664. Unlike the case with joint clients, "experts are given information [about the representation] on a need-to-know basis." (D.I. 102 at 3) In sum, the facts here are different from *Newsome*, and are thus simply insufficient to overcome the otherwise clear rule recognized in *Teleglobe*—one that expressly states that Plaintiffs cannot unilaterally waive the Non-Party Petitioners' privilege.[2]

---

[2] In so concluding, the Court does not mean to suggest that this issue is an easy one. There is of course a caveat to the joint-client privilege, which is that the privilege "only protects communications from compelled disclosure to parties outside the joint representation" such that, for example, when "former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." *Teleglobe*, 493 F.3d at 366 (citing Restatement (Third) of the Law Governing Lawyers § 75(2)). In bringing suit here, Plaintiffs have surely put at issue certain subject matter that was also at play in the Appraisal Action. And one can credibly argue, as Defendants have, (D.I. 101 at 2-3), that a former expert witness is not someone who should be considered to be "outside the [former] joint representation" under *Teleglobe*'s meaning. *Teleglobe*, 493 F.3d at 366 (citation omitted).

That said, the Court still disagrees with Defendants. While it is easy to conclude that former joint clients and their former joint counsel were all "inside" the former joint representation, an expert witness's place and role seems a bit different. After all, privilege law does not treat a client's communications with its counsel the same as the client's communications with its testifying expert witness. Indeed, while a client's confidential communications with its counsel about a litigation matter will almost always be protected by the attorney-client privilege, there are a number of circumstances where that client's (or its counsel's) confidential communications with its expert about the matter will *not* be protected from disclosure to third parties. *See CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176,

(6) With regard to Defendants' concern that an adverse ruling would allow Plaintiffs to use privileged documents as a "'sword and a shield,'" (D.I. 96 at 4 (citation omitted); *see also* D.I. 99 at 1-2), the Court notes that it is not sure that is exactly what is happening here. It is not as if the record shows that Plaintiffs have withheld or disclosed only certain G&E-related Appraisal Action communications based on whether the communication relates to a particular sub-issue, or whether the communication hurts or helps Plaintiffs' case. Plaintiffs have only withheld communications that involve certain persons who enjoy the privilege (i.e., the Non-Party Petitioners) and who have not waived it.

(7) The Court is also mindful of the fact that, in light of the way Defendants brought this motion, Non-Party Petitioners were not able to participate or have their views heard. Contrary to Defendants' view, (D.I. 99 at 2), that fact should make it less likely, not more likely, that the Court would rule in Defendants' favor here.

For all of the above reasons, the Court DENIES Defendants' request for production of the communications at issue.

Dated: March 9, 2021

Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

178 (D. Del. 2003); *see also Chrisjulbrian Co. v. Upper St. Rose Fleeting Co., Inc.*, Civ. A. No. 93-1879, 1994 WL 673440, at *2 (E.D. La. Dec. 2, 1994) ("[T]here are many communications between a client and an expert witness which are not privileged[.]") (citations omitted). For this reason, and for the others set out herein, the Court concludes that a former expert witness is sufficiently unlike a former joint client or former joint attorney, such that on these facts, Plaintiffs may not waive the joint-client privilege of the Non-Party Petitioners.